HELMERICH & PAYNE, Inc., et al. v. AMERICAN NAT. BANK OF SHAWNEE.

No. 31269.     Feb. 27, 1945.

Rehearing Denied April 3, 1945.

*157 P. 2d 168.*

Settle, Monnet & Clammer, of Tulsa, for plaintiffs in error.

Reily & Reily, of Shawnee, for defendant in error.

BAYLESS, J. Helmerich & Payne, Inc., a corporation, and Midland Oil Corporation, a corporation, appeal from a judgment of the district court of Pottawatomie county in favor of the American National Bank of Shawnee, Okla., for relief sought by the bank in its petition in intervention. The action in the district court was instituted by St. Louis Well Servicing, Inc., a corporation, against E. N. Panner and the plaintiffs in error, for the foreclosure

of a materialmen's lien against an oil and gas lease, and thereafter others, including bank, interested in the subject matter of the action came into the action. However, this appeal involves only issues between plaintiffs in error and bank on bank's claim.

Panner was the owner of a lease. He entered into a written contract with Midland to sell it a one-half interest in the lease for $10,000 if the well was a dry hole, or $12,500 if the well produced. Later he entered into a written contract with Helmerich & Payne, Inc., to assign it a one-fourth interest in the lease for the drilling of the well. When the well reached the sand desired it was judged to be a producer, whereupon Panner purchased certain casing from National Supply Company, completed the well, but was later forced to abandon it as not being a commercial producer.

When Panner issued his check to pay for the casing he had on deposit in bank $1,937.91, but issued his check for $3,868.31. He thereupon borrowed $4,000 from bank, on a note signed by him individually, and assigned bank the $2,500 yet coming from the escrow and gave it a chattel mortgage on his three-fourths interest in the casing to secure his note. Later the $2,500 was released to Panner by bank under Midland's certificate, as provided in the contract between Midland and Panner, and Panner permitted bank to apply it on the $4,000 note, leaving a balance of $1,500. It is this balance with interest, attorneys' fees, and costs that are involved in this appeal.

It is bank's contention that although Panner executed the note as if he was acting individually, actually he was procuring the money to pay for casing that he, admittedly a member of a mining partnership with plaintiffs in error, had purchased and used in the furtherance of the partnership's business, and under well-recognized rules of law he was binding the partnership and its members for the debt. It is the contention of plaintiffs in error that Panner borrowed the money on his individual responsibility, to pay for his contribution to the venture, and that he did not intend to bind the mining partnership and had no authority to do so. Each side cites and relies on Smith v. Stockyards Loan Co., 186 Okla. 152, 96 P. 2d 55, as the only authority needed to sustain their contentions.

Three rules of law relating to situations similar to the one before us are stated in the above case. In general terms it is said: (1) A firm is not liable on a loan made to one partner only, soley on his credit, even though he may use the money thus obtained for the firm; (2) that partners are principals and agents of and for the firm, and if one partner borrows money in his own name but for the firm's benefit, this can be shown for the purpose of making the firm liable; and (3) that where a partner has borrowed money in his own name, but has used it as defined in the second rule just stated, and the lender desires to show this as the basis for making the firm liable, he must show that the money loaned was actually so used. It is, of course, a corollary that proof is admissible to explain these transactions. For discussions of this subject generally, see 47 C.J. 864, sec. 339, and footnotes; 40 Am. Jur. 236, sec. 149 and footnotes; Woodson v. Bumpers, 224 Ala. 390, 140 So. 766; Garner v. Hallum, 169 Ark. 295, 273 S.W. 1025; and other cases in Am. Dig. (West), Partnership, Key Nos. 145 and 146(3).

What is the evidence in this case? It consists of certain stipulations of fact, certain written instruments and the testimony of Panner. This evidence, except the stipulations, was introduced by bank, and plaintiffs in error rested without introducing evidence. Bank argues that this omission to introduce evidence when considered along with the failure to verify the answers filed virtually amounts to the failure to defend the action. Nevertheless, we think there is presented an issue of whether bank's judgment is sustained by the evidence and law.

While the basic legal contention of plaintiffs in error is the same as to each, actually their factual situations differ and this appears from the argument made in their joint brief. The respective contractual relation of each to Panner causes this. Upon consideration of the contract between Panner and Midland, and the escrow instructions given to bank by them, as corroborated by the testimony of Panner, we are of the opinion that as between them Panner was to furnish the casing for this well as his expense, and that for $12,500 Midland was to have a well completed to oil runs into the tank. This was so stated to bank in the escrow instrument. On the part of Helmerich, no contention is made that it was not to pay for one-fourth the cost of the casing. With these premises, let us see if bank's evidence justifies the trial court's finding that although Panner acted as an individual he was in fact acting for the partnership and thus bound plaintiffs in error, his copartners.

Bank relies principally upon that part of the evidence wherein Panner testified that he told bank what he desired the money for, and the purpose for which he did use the money. However, when Panner's entire testimony is read, it is apparent that he did not state these facts to the bank for the purpose of binding his copartners but simply in explanation of what he needed the money for. As pointed out above, his contract with Midland bound him to buy the casing from his funds. He testified in answer to several questions that he was bound to pay for three-fourths of the casing, and we are of the opinion this three-fourths represented the one-fourth interest then owned by him plus the one-half interest he had sold to Midland; and he corroborated this by saying several times that Helmerich was bound to pay for the other one-fourth. He says twice that he told the bank, when he was borrowing the money, that it was his obligation to pay for three-fourths and ". . . that Helmerich and Payne was to pay for a fourth of the pipe."

We are of the opinion that bank could not have thought then that it was lending Panner anything on the credit or responsibility of Midland, for it was then advised from writings in its possession that Panner owed Midland a completed well and Panner told it expressly that he was obligated to pay for three-fourths, that is, one-half interest more than he owned. He pledged as collateral therefor the $2,500 that Midland had put in escrow to pay him, and also pledged the three-fourths interest he was bound to buy. We think his testimony conclusively discloses that he was not purporting to bind Midland, and bank had no right then nor afterwards to suppose that it could look to Midland for payment of the note.

By the same reasoning, bank could not have supposed it was lending Panner money to buy something for Helmerich & Payne, for Panner's testimony, which is bank's evidence, clearly discloses that he told bank that Helmerich & Payne would pay for their one-one-fourth of the casing.

Bank's evidence does not sustain the judgment rendered in its favor against plaintiffs in error on any theory discussed in Smith v. Stockyards Loan Co., supra.

Since the judgment appealed from is clearly against the weight of the evidence, said judgment is reversed so far as it purports to render a personal judgment against plaintiffs in error and the cause is remanded for further proceedings, not inconsistent with the views herein expressed.

HURST, V.C.J., and RILEY, OSBORN, CORN, and ARNOLD, JJ., concur. DAVISON, J., dissents.

DAVISON, J. (dissenting). I am unable to concur in the conclusion announced by my associates in this case. It is my opinion that the judgment of the trial court should be affirmed.

Helmerich & Payne, a corporation, Midland Oil Corporation and E. N. Panner were, as has been previously ad-

judicated in litigation between the parties, joint adventurers or copartners when, on March 17, 1941, Panner borrowed $4,000 from the American National Bank to place on deposit in that bank a sum sufficient to meet a check for $3,861.31 which had been previously executed and delivered by Panner to partially pay a debt for a greater amount in favor of the National Supply Company for oil well casing, which indebtedness thus paid in part has been adjudicated to have been a partnership debt.

When Panner borrowed the money from the bank he executed his individual note and a chattel mortgage on the undivided interest in the oil well casing.

We thus have one partner borrowing money to pay or partially pay a partnership debt previously created to acquire property for the partnership.

It is the general rule that when a partner borrows money on his individual credit his partners are not thereby rendered liable for the debt even though the proceeds of the loan are used in furtherance of partnership business.

However, when a partner executes instruments purporting on their face to be individual, it may still be shown that he actually pledged the partnership credit and that the creditor made the loan on that basis. Such was our holding in Smith v. Stock Yards Loan Co., 186 Okla. 152, 96 P. 2d 55.

The evidence of the bank in this case was the testimony of Panner coupled with written instruments dealing with various phases of the relationship between the parties.

The testimony of Panner was not precise on the question of whether he pledged only individual as distinguished from partnership credit. Conflicting inferences can be drawn on the point

The trial court drew the inference most favorable to the bank and decided in its favor. A majority of my

associates draw another, and they believe better and more rational inference, namely, that only individual credit was used. It is said in the majority opinion:

"Bank relies principally upon that part of the evidence wherein Panner testified that he told bank what he desired the money for, and the purpose for which he did use the money. However, when Panner's entire testimony is read, it is apparent that he did not state these facts to the bank for the purpose of binding his copartners but simply in explanation of what he needed the money for. : . ."

This determination of the value of conflicting inferences constitutes an erroneous basis for our decision because of the manner in which the cause was tried and disposed of in the court below.

A demurrer to the evidence of the intervener was overruled and plaintiffs in error herein stood on their demurrer. A demurrer to the evidence admits for the purpose of the demurrer the truth of the facts established and the inferences to be drawn therefrom when the evidence is viewed in a light most unfavorable to the demurring party. Thus we are on this appeal bound to accept the view of the evidence most favorable to the bank. If we do so, our decision should be one of affirmance.

For the foregoing reasons, I respectfully dissent.